UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROLAND C. SAINTLOT,
Inmate No. Y45056,
    Plaintiff,

vs.                                    Case No.: 3:18cv1334/LAC/EMT

LIEUTENANT STOKES and
SERGEANT DICE,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

The matter is before the court on Defendants' Motion for Summary Judgment (ECF No. 48), Plaintiff's response in opposition (ECF No. 53), and Defendants' reply (ECF No. 56). The case was referred to the undersigned magistrate judge for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of the parties' submissions and the relevant law, the undersigned concludes Defendants' motion for summary judgment should be granted.

I.  BACKGROUND[1]

Plaintiff is an inmate of the Florida Department of Corrections, currently confined at Santa Rosa Correctional Institution (SRCI).  Plaintiff names two Defendants in the third amended complaint—Lieutenant Stokes and Sergeant Dice—both of whom were employed at SRCI at the time of the events giving rise to Plaintiff's claims.  Plaintiff alleges he declared a psychological emergency on April 13, 2018, due to "severe mental distress" (ECF No. 15 at 5).  Defendants responded and instructed Plaintiff to "strip down to his boxers" (*id.*).  Plaintiff says he was "confused as to why he had to submit and strip down to his boxers" (*id.*).  Defendant Stokes explained that when an inmate declares a psychological emergency, the inmate must "be in their boxers to talk to the Mental Health Professional" (*id.*).

Plaintiff claims he complied with the officers' instructions and "stripped completely down" (*id.*).  Defendant Stokes then told Plaintiff to "lift [his] testicles, then to turn around and squat and cough" (*id.*).  Plaintiff again complied (*id.*).  Another officer who was present, Captain Parrot, "told Plaintiff to repeat the strip search routine again" (*id.*).  Plaintiff says he told Parrott that "sex games were being

---

[1] The facts set forth below are derived from Plaintiff's third amended complaint, the operative pleading in the case (ECF No. 15).

Case No.: 3:18cv1334/LAC/EMT

committed and that he would like to report it under the Prison Rape Elimination Act, which Captain Parrott [and Defendants] refused to allow" (ECF No. 15 at 6).

Plaintiff alleges the officers left his cell and returned several minutes later with a spit shield (*id.*). Upon their return, the officers advised Plaintiff he was being placed on property restriction after he "saw psychology" (*id.*). Plaintiff says he submitted to hand restraints and Defendant Dice "called to have [his] door rolled" (*id.*). Plaintiff alleges he stepped out of his cell backward as directed and that, upon doing so, Defendants grabbed him by the arms and "started to manhandle [him] by shoving and pushing Plaintiff and applying pressure to Plaintiff's arm to cause pain by pinching the Plaintiff's skin because Plaintiff would not put his lips on the wall as Lieutenant Stokes ordered him too [sic]" (ECF No. 15 at 6). According to Plaintiff, in a low voice that only Plaintiff and Dice could hear, Stokes threatened to "crack Plaintiff's head and skull" if he did not comply (*id.*). Plaintiff responded by telling Stokes to "do whatever he thought was right" (*id.*). Stokes "then proceeded to crack Plaintiff's head against the wall[] but failed in his attempt because Plaintiff moved to try and protect himself" (*id.*).

Defendant Dice "then proceeded to clip Plaintiff on the side of the head right before proceeding to slam Plaintiff face first on the concrete floor in front of cell C 2111 causing the Plaintiff to immediately feel as [sic] real and severe intense sharp

pain on the right side of his face" (ECF No. 15 at 7). "Upon Plaintiff hitting the concrete floor, Sergeant Dice proceeded to wrap his arms around Plaintiff's neck and proceeded to choke him while Lieutenant Stokes proceed[ed] to knee Plaintiff in the face with his right knee, several times causing Plaintiff to feel a very sharp and intense pain to the Plaintiff's mouth[,] ear and face on the right side" (*id.*). "Upon Sergeant Dice choking the Plaintiff and Lieutenant Stokes kneeing Plaintiff in the face several times, Plaintiff noticed a lot of blood rushing out of his mouth, while Sergeant Dice was also kneeing Plaintiff in his right side of his rib cage" (ECF No. 15 at 7).

Plaintiff says he "woke up on the floor of his cell to Lieutenant Stokes shaking him, telling him not to move" (*id.*). Plaintiff was wearing a spit shield soaked in blood and also had blood on his chest and hand (*id.*). Plaintiff claims there was "a lot" of blood in front of his cell as well (*id.*). Plaintiff alleges Defendants had a nurse evaluate him and that the nurse attempted to have him go to the door (*id.*). Plaintiff says he was "non-responsive lying in a puddle of blood" and that the nurse told security to "pull" him, which Defendants refused to do (*id.*). Plaintiff also avers that "at the time of the assault and aggravated battery, . . . he was in handcuffs behind

his back, in no position to protect himself from the assault and aggravated battery committed in a malicious and sadistic manner" (*id.*).

Plaintiff asserts claims under the Eighth and Fourteenth Amendments, seeking $100,000 in compensatory damages and $25,000 in punitive damages against each Defendant (ECF No. 15 at 9). Plaintiff also seeks costs of suit and a declaratory judgment that Defendants violated his constitutional rights (ECF No. 15 at 10).

## II. DISCUSSION

### A. Standard of Review

To prevail on a motion for summary judgment, the moving party must show the nonmoving party has no evidence to support his case or present affirmative evidence that the nonmoving party will be unable to prove his case at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id.* at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

To defeat summary judgment, the nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  And "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004); *see also Celotex Corp.*, 477 U.S. at 324.  The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See id.*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) (noting Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers, or other materials on file, designate specific facts showing there is a genuine issue for trial); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

"Typically, the nonmoving party may not rest upon only the allegations of his pleadings . . . but must set forth specific facts showing there is a genuine issue for trial." *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014). "A *pro se* plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence." *Id*. Evidence presented by the nonmoving party in opposition to a motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jones v. Cannon*, 174 F. 3d 1271, 1282 (11th Cir. 1999). The nonmoving party nevertheless still bears the burden of coming forward with sufficient evidence of every element he must prove. *See Celotex Corp.*, 477 U.S. at 317. A motion for summary judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322.

B.   Defendants' Motion

Defendants argue Plaintiff's claims fail because the evidence—including fixed wing and handheld video recordings of the incident in question—shows Plaintiff attempted to break away from Defendants' custodial hold and run down the

wing despite Defendants' commands that he stop. Defendants maintain they gave several loud verbal orders that Plaintiff cease the combative behavior and that when Plaintiff ignored the orders and refused to comply, they applied downward pressure to place Plaintiff in a prone position on the floor. At that point, Defendants say, Plaintiff stopped resisting and they ceased using force against him.

C. Plaintiff's Claims

A viable claim under 42 U.S.C. § 1983 requires a plaintiff to establish two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). Here, Plaintiff invokes the Eighth and Fourteenth Amendments.

1. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "In the context of a prisoner's conditions of confinement after incarceration, prison officials violate the Eighth Amendment through "'the unnecessary and wanton infliction of pain.'" *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835,

(1994) (internal marks omitted)). "Under the Eighth Amendment, force is deemed legitimate in a custodial setting if it is applied in a good-faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *Pierre v. Padgett*, 808 F. App'x 838, 844 (11th Cir. 2020) (internal marks omitted). "To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 844–45 (internal marks omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (internal marks omitted). When determining the reasonableness of force used, the court must "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Pierre*, 808 F. App'x at 845 (internal marks omitted).

As set forth above, Plaintiff alleges excessive force by Defendants Stokes and Dice. In support of their motion, Defendants submitted Declarations in which they

describe the incident in question. Lieutenant Stokes states in his Declaration that at approximately 1:10 p.m. on April 13, 2018, Sergeant Dice ordered Plaintiff to face the wall while officers removed property from Plaintiff's cell (ECF No. 48-1 at 2). Stokes says Plaintiff refused and attempted to break Stokes' custodial hold by pulling away and attempting to run down the wing (*id.*). Stokes says he ordered Plaintiff to cease the disruptive behavior and that Plaintiff refused his command (*id.*). Stokes and Dice thus initiated a "reactionary use of force" by putting downward pressure on Plaintiff, forcing Plaintiff into a prone position on the floor (*id.*). Stokes denies kneeing, choking, and kicking Plaintiff (*id.*).

Dice describes the incident almost identically in his Declaration. Like Stokes, Dice states that at approximately 1:10 p.m. on April 13, 2018, he ordered Plaintiff to face the wall while property was being removed from Plaintiff's cell (ECF No. 48-1 at 2). Dice says Plaintiff refused the order and attempted to break his custodial hold by pulling away and trying to run down the wing (*id.*). Dice says he ordered Plaintiff to cease the disruptive behavior and that Plaintiff again refused his command (*id.*). According to Dice, he and Stokes thus initiated a "reactionary use of force" by putting downward pressure on Plaintiff, forcing Plaintiff into a prone position on the floor (*id.*). Dice denies kneeing, choking, and kicking Plaintiff (*id.*). Dice also states that, contrary to Plaintiff's assertion, the nurse who attempted to

conduct a post-use-of-force examination of Plaintiff never requested that Plaintiff be removed from his cell and that Plaintiff, in fact, refused the examination (*id.*).

As indicated above, Defendants also submitted fixed wing and handheld video footage of the incident, both of which corroborate Defendants' version of events. The fixed wing video shows two officers going to Plaintiff's cell and standing outside the cell (*see* Exhibit E). One of the officers leaves, and then three officers return, one of whom announces that Plaintiff is to be strip-searched (*see id.*). Shortly thereafter, Plaintiff exits the cell and an officer appears to place handcuffs on Plaintiff while items are removed from the cell (*see id.*). It then appears that officers are trying to escort Plaintiff back into the cell and that, before they are able to do so, Plaintiff attempts to break free of the officers' hold and run across the wing (*see id.*).

Two officers, presumably Defendants, grab Plaintiff, yell for Plaintiff to get on the ground, and force Plaintiff into a prone position on the floor while telling Plaintiff to stop resisting (*see* Exhibit E). The two officers hold Plaintiff on the ground until other officers come to assist, including with a spit shield (*see id.*). Once other officers arrive, the officers instruct Plaintiff to stand up and, when he refuses to do so, pick Plaintiff up and carry him to his cell (*see id.*). The entire incident took approximately five minutes, with all but approximately seven seconds consisting of the two officers lying on Plaintiff and trying to subdue and restrain Plaintiff until

officers could return Plaintiff to his cell (*see id.*). Although the video depicts blood on the floor underneath Plaintiff's head, the video does not depict any officer kneeing, choking, or kicking Plaintiff (*see id.*).

The post-use-of-force video shows Plaintiff being carried into his cell by officers and placed on the floor in a prone position (*see* Exhibit H). Officers repeatedly instruct Plaintiff not to resist as they take the handcuffs off of him (*see id.*). After the officers exit the cell, Plaintiff stands and then refuses medical treatment from the nurse who attempted to conduct a post-use-of-force examination and specifically asked to see Plaintiff's face (*see id.*).

The evidence plainly shows Defendants did not use force maliciously or sadistically and, instead, used force only after Plaintiff attempted to break free from Dice's hold and run and then failed to comply with orders that he get on the ground and stop resisting. *See Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018); *Danley*, 540 F.3d at 1307; *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance."). The evidence further shows Defendants' use of force was proportional to the need. Indeed, as the Eleventh Circuit has recognized, "use of a takedown is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Miles*, 757 F. App'x at 830. And

Defendants reasonably perceived Plaintiff's behavior as threatening, at least to prison staff, especially considering Plaintiff had declared a psychological emergency. *See id.*

As in *Miles*, "[t]he fourth and fifth . . . factors also weigh against finding a constitutional violation," as Defendants' "use of force was tempered because a nurse came to assist [Plaintiff immediately following] the incident." 757 F. App'x at 830; *see also Ledlow v. Givens*, 500 F. App'x 910, 913 (11th Cir. 2012) ("The immediate offer of medical assistance demonstrates an effort to temper the severity of the response."); *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009) (per curiam) (finding fact that "officers immediately summoned medical assistance for the injured inmate . . . strong evidence that there was no malicious and sadistic purpose in the use of force"). And Plaintiff has not shown he suffered serious injury as a result of the incident. To the contrary, as indicated above, Plaintiff declined medical treatment immediately following the incident.[2]

Although the court views the evidence in the light most favorable to the plaintiff when deciding a motion for summary judgment, the court does not accept a

---

[2] Plaintiff attached as Exhibit A to his response five medical sick-call requests starting two days after the incident (*see* ECF No. 53 at 27–31). As Defendants point out in their reply, however, with one exception—on May 1, more than two weeks after the incident, Plaintiff refused treatment.

plaintiff's version of events "when obviously contradicted by the record," including "a video of the entire event." *McCroden v. Cty. of Volusia*, 724 F. App'x 768, 771 (11th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). In such case, the court "view[s] the facts in the light depicted by the video." *Id.*; *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Howard v. Memnon*, 572 F. App'x 692, 695 (11th Cir. 2014) ("Because [plaintiff's] accounting of the incident was blatantly contradicted by the record, so that no reasonable jury could have believed it, we cannot adopt that version of the facts for purposes of summary judgment."); *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (holding that "where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible")). Here, as set forth above, the undisputed video evidence plainly contradicts Plaintiff's account of the incident and supports that of Defendants. The undisputed evidence thus shows not only that use of force was necessary, but also that the force used was reasonable under the circumstances.

Even if the court were to determine Defendants used excessive force during the incident in question, Defendants' motion would still be due to be granted because

Defendants are entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pierre*, 808 F. App'x at 846 (internal marks omitted). "To show that an official who acted within the scope of his discretionary authority is not entitled to qualified immunity, a plaintiff must establish both that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* (internal marks omitted). Considering Plaintiff attempted to break Dice's hold on him and run down the wing while officers were commanding that he get on the ground and stop resisting and, further, that Defendants ceased using force once they were able to subdue Plaintiff, no reasonable jury could conclude Defendants violated Plaintiff's clearly established constitutional rights. *See, e.g., McCroden*, 724 F. App'x at 770–72 (affirming grant of summary judgment in favor of officers based on qualified immunity where officers used an "arm-bar takedown" on an inmate who resisted an escort hold, resulting in the dislocation and fracture of the inmate's hip).

For the reasons set forth above, the undersigned finds there is no genuine issue of material fact with regard to Plaintiff's claim of excessive force and that Defendants, therefore, are entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment claim. *See, e.g., Miles*, 757 F. App'x. at 830

(affirming district court's grant of summary judgment in favor of jail officers on plaintiff's excessive force claim); *Reed v. Mitchem*, 707 F. App'x. 617 (11th Cir. 2017) (affirming district court's judgment, at the conclusion of a bench trial, in favor of officer accused of using excessive force and denial of plaintiff's motion to amend the judgment); *Howard,* 572 F. App'x at 695 (affirming district court's grant of summary judgment on plaintiff's excessive force claim)*, Ledlow*, 500 F. App'x. at 912–14 (same)*.*

2. Fourteenth Amendment

Plaintiff's Fourteenth Amendment claim is based on the same facts and circumstances as his Eighth Amendment claim. If a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Booth v. City of Roswell*, 754 F. App'x 834, 837 (11th Cir. 2018) ("The first step in a § 1983 claim is to identify the specific constitutional right allegedly infringed.") (citing *Graham*, 490 U.S. at 394). Substantive due process analysis thus is inappropriate in this instance, and summary judgment also should be granted with regard to Plaintiff's Fourteenth Amendment claim. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (reiterating the holding in *Graham* that "if a constitutional claim is covered by a

Case No.: 3:18cv1334/LAC/EMT

specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

III. CONCLUSION

Even crediting Plaintiff's version of events, which the court must, *see Evans v. Stephens,* 407 F.3d 1272, 1278 (11th Cir. 2005), the undersigned finds Plaintiff has failed to raise a genuine issue of material fact with regard to his claims against Defendants Stokes and Dice. Defendants thus are entitled to summary judgment as a matter of law.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendants' Motion for Summary Judgment (ECF No. 48) be **GRANTED**.

2. That the clerk of court be directed to enter judgment accordingly and close the file.

At Pensacola, Florida this 8th day of June 2021.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

# NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** A copy of objections must be served on all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**